**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Dennis R. Keene

    v.                                    Civil No. 14-cv-142-LM
                                              Opinion No. 2014 DNH 226
Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration


**O R D E R**


    Pursuant to 42 U.S.C. § 405(g), Dennis Keene moves for

reversal of the Acting Commissioner's decision to deny his

application for Social Security disability insurance benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §

423.  The Acting Commissioner, in turn, moves for an order

affirming her decision.  For the reasons that follow, the

decision of the Acting Commissioner, as announced by the

Administrative Law Judge ("ALJ"), is affirmed.


**Standard of Review**

    The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> [Acting] Commissioner of Social Security, with or
> without remanding the cause for a rehearing.  The
> findings of the Commissioner of Social Security as to

     any fact, if supported by substantial evidence, shall
     be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of

social security disability benefits unless 'the [Acting

Commissioner] has committed a legal or factual error in

evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS,

76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490

U.S. 877, 885 (1989)).

     As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts." Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the

[Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the

resolution of conflicts in the evidence is for the [Acting

Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS,

955 F.2d 765, 769 (1st Cir. 1991) (citations omitted).
Moreover, the court "must uphold the [Acting Commissioner's]
conclusion, even if the record arguably could justify a
different conclusion, so long as it is supported by substantial
evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st
Cir. 1988).  Finally, when determining whether a decision of the
Acting Commissioner is supported by substantial evidence, the
court must "review[] the evidence in the record as a whole."
Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of
HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

### Background

The parties have submitted a Joint Statement of Material
Facts, document no. 11.  That statement is part of the court's
record and will be summarized here, rather than repeated in
full.

In 1997, when he was 30 years old, Keene had a heart
attack, and subsequently returned to work.  In 2007, he suffered
another heart attack, which also caused a stroke.  His heart
attack and stroke put him out of work for about a year.  Then,
in May of 2011, he retired from his job as a glass evaporator
machine operator, due to: (1) numbness in his leg, which
prevented him from making his daily commute to Massachusetts;
and (2) back pain.

In his initial application for DIB benefits, filed on August 10, 2011, Keene identified the following illnesses or conditions as the basis for his claim: stroke, heart attack, diabetes, anxiety, obesity, multilevel spinal lumber stenosis, degenerative disc disease, panic attacks, depression, and arthritis in his back.  See Administrative Transcript (hereinafter "Tr.") 86.  The record includes diagnoses of diabetes; several lower-back conditions; generalized anxiety disorder; and major depressive disorder, mild, recurrent.

Treatment for Keene's back conditions has included medication, epidural injections, facet blocks, facet joint injections, physical therapy, and home exercise.  Doctors have also recommended weight loss, and determined that Keene was a poor candidate for surgery because of his obesity.  Treatment for his diabetes has included medication.

On December 29, 2011, a state-agency consultant, Dr. Jaffe, offered various opinions regarding Keene's physical residual functional capacity ("RFC").[1]  With regard to exertional limitations, Dr. Jaffe opined that Keene could: (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk for a total of two hours, with normal breaks, in an eight-hour workday; (4) sit for about six

---

[1] Residual functional capacity is "the most a [claimant] can do despite his limitations."  20 C.F.R. § 404.1545.

hours, with normal breaks, in an eight-hour workday; (5) push and or pull 20 pounds occasionally and 10 pounds frequently.  He also stated that Keene needed to stand up hourly and walk around for five to ten minutes to alleviate back pain.  With regard to postural limitations, Dr. Jaffe opined that Keene could occasionally climb ramps and stairs; climb ladders, ropes, and scaffolds; balance; kneel; crouch; and crawl.  Finally, Dr. Jaffe identified no manipulative, visual, communicative, or environmental limitations.

In early 2012, Dr. James Fitzgerald, who has treated Keene since 2005, submitted a letter that states, in pertinent part:

> He [Keene] is currently unable to work in any capacity due to multiple medical illnesses.
>
> Mr. Keene has already suffered a stroke and a relatively large myocardial infarction . . . .  He will need lifelong anti-coagulation with coumadin.  In addition, he is treated for severe spinal stenosis which is ongoing and not amenable to surgical correction at this time.  This causes chronic, daily pain for which he is being treated.
>
> He is under the care of several specialists including cardiology, orthopedic surgery, pain management, and anesthesia.
>
> Because of these conditions, he is unable to work in any capacity.

Tr. at 459.

After conducting a hearing on January 31, 2013, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally lift up to 20 pounds and frequently ten pounds.  Standing and walking would be limited to two hours each with sitting up to six hours.  He could occasionally climb ramps and stairs, with no climbing of ladders, ropes, or scaffolds.  He could occasionally stoop, kneel, crouch, crawl, and balance.  The claimant would have to change positions hourly during the workday, for approximately 5-10 minutes.  He could engage and interact with others, but he would have limited ability to engage in sustained, regular, ongoing frequent speech.  He should a avoid temperature extremes, as well as exposure to concentrated levels of fumes, dusts, gases, and other respiratory irritants.  The claimant could understand, remember, and carry out simple, 1-3 step tasks.  He should avoid more complicated 4-5 step tasks, or greater.  He has the ability to maintain [concentration, persistence, and pace] for 2-hour periods of time.  He can make simple decisions and he can perform at a consistent pace, but not at a high production rate.  The complainant requires the ability to use the restroom as many as 3-4 times.

. . . .

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

Tr. at 22, 27.  Based upon the testimony of a vocational expert

("VE"), the ALJ determined that Keene could perform the jobs of

bench worker, assembly, and inserter.  Moreover, while the ALJ

determined that Keene had the RFC for light work, he also posed

a hypothetical question to the VE based upon a modification of

that RFC, and all three of the jobs the VE (and, thereafter, the ALJ) said Keene could perform are classified as sedentary. Sedentary work, in turn, "involves lifting no more than 10 pounds at a time," 20 C.F.R. §1567(a), involves sitting, and may involve occasional walking and standing, see id.

## Discussion

According to Keene, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) made a credibility assessment that was not supported by substantial evidence; (2) failed to fulfill his duty to develop the record; and (3) made a faulty determination of his RFC, which also infected his determination that there are jobs that exist in significant numbers in the national economy that he can perform.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The only question in this case is whether Keene was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to
> engage in any substantial gainful activity by reason
> of any medically determinable physical or mental

impairment which can be expected to result in death or
which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which
> exists in the national economy" means work which
> exists in significant numbers either in the region
> where such individual lives or in several regions of
> the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of
determining eligibility for disability insurance benefits, an
ALJ is required to employ a five-step process.  See 20 C.F.R. §
404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and

age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the [Acting
> Commissioner] then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Acting
> Commissioner] considers objective and subjective
> factors, including: (1) objective medical facts; (2)
> [claimant]'s subjective claims of pain and disability
> as supported by the testimony of the claimant or other
> witness; and (3) the [claimant]'s educational
> background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

B. Keene's Arguments

Keene takes issue with the ALJ's credibility finding, his failure to develop the record, and his RFC determination.

### 1. Credibility

The first step in a court's credibility analysis is to identify the statements at issue.  See Kalloch v. Astrue, No. 11-cv-522-JL, 2012 WL 4930986, at *8 (D.N.H. Sept. 18, 2012) report & recommendation adopted by 2012 WL 4930983 (D.N.H. Oct. 15, 2012).  In his decision, the ALJ described the statements he evaluated this way:

> At the hearing, [Keene] testified that he has altered speech and poor memory.  He alleged poor ability to engage in physical exertion, shortness of breath, difficulty bending, and an inability to lift anything over 25 pounds.  He noted that he uses the restroom about 5 times per day.  The claimant alleged that he has frequent heartburn, he now takes medications for anxiety, and he can remain in one position for up to 15 minutes at a time.  The claimant testified that his heart attack caused muscle damage and his stroke left him without the ability to speak for one year, as well as right-sided weakness.  He complained of continued stuttering.

Tr. at 23-24.  In addition, while the ALJ did not mention pain in his overview of Keene's hearing testimony, he did report the following pain-related statements that Keene made to providers of rehabilitation services:

> Treatment notes document complaints of increased pain with prolonged sitting and standing.  He complained of being unable to perform heavy household activities. He complained of increased pain with standing greater than 30 minutes and with sitting more than 1 hour; he

10

> complained of being unable to walk greater than a
> quarter-mile at a time.

Tr. at 24 (citations to the record omitted).  At the hearing,
Keene offered relatively little testimony about pain, and
virtually no testimony about how pain affected his ability to
perform work-related activities.

In his decision, the ALJ found that "the claimant's
statements concerning the intensity, persistence and limiting
effects of [his] symptoms are not entirely credible."  Tr. at
24.  Keene criticizes various aspects of the ALJ's credibility
assessment.  The court, however, need not wade into this part of
the parties' dispute because it does not appear that the ALJ
needed to address the credibility of Keene's statements in the
first place.  Even if the ALJ had found Keene's statements to be
fully credible, his determination that Keene was not disabled
would still be supported by substantial evidence.  That is
because the ALJ incorporated into either his RFC or his
hypothetical questions to the VE virtually every impairment-
related limitation Keene identified in his hearing testimony and
his statements to those who provided him with rehabilitation
services.

For example, regardless of the credibility of Keene's
statement that he cannot lift any more than 25 pounds, the ALJ's
RFC included a capacity to lift no more than 20 pounds.

Likewise, Keene's statement that he needed to use the bathroom about five times per day as a side effect of medication is accounted for in the ALJ's RFC, which includes a need to use the restroom three or four times in an eight-hour workday.  And altered speech, stuttering, and poor memory are accounted for by the RFC's restrictions to: (1) limited sustained, regular, ongoing frequent speech; and (2) simple one-to-three-step tasks and simple decisions.  Keene's need to change positions is also accounted for in the ALJ's hypothetical question to the VE, in which the ALJ posited "a need to have [a] sit/stand option as often as every 10 or 15 minutes," Tr. at 79.  Finally, because all three of the jobs the ALJ said Keene could perform are classified as sedentary, Keene's statements about his inability to sustain physical exertion was also factored into the ALJ's decision.

The same holds true for Keene's statements about pain. Keene told his providers of rehabilitation services that his pain: (1) was exacerbated by standing for more than 30 minutes or sitting for more than 60 minutes; and (2) precluded him from performing heavy household activities and walking more than a quarter of a mile at a time.  None of the jobs that the ALJ said Keene could perform required any of those activities.  So, even if the ALJ had credited all of Keene's statements about pain, that would not undermine his ultimate decision.  Accordingly,

the ALJ's credibility assessment was not necessary for his decision, and the court need not address it any further.

That said, the court notes that in the portion of Keene's memorandum devoted to credibility, and in particular the seventh Avery factor, he argues that the ALJ erred by giving limited weight to Dr. Fitzgerald's opinion that he "was unable to work in any capacity because of his multiple medical illnesses."  Tr. at 458.  With regard to that opinion, which was an opinion on an issue that is reserved to the commissioner, see 20 C.F.R. 404.1527(d)(1), the ALJ's obligation was limited to "review[ing] all of the medical findings and other evidence that support[ed] [Dr. Fitzgerald's] statement that [Keene was] disabled," id. Apart from not reviewing some treatment records that Keene did not submit to the ALJ, discussed below, the ALJ did all that he was required to do when considering Dr. Fitzgerald's opinion.

### 2. Failure to Develop the Record

Keene's next argument is that the ALJ erred by failing to fulfill his responsibility to adequately develop the record. Specifically, Keene contends that the ALJ had a duty to obtain records of the medical treatment he received during the year prior to his hearing.

In a recent memorandum order, Judge Laplante outlined the relevant law:

As the Court of Appeals has explained, "[b]ecause Social Security proceedings are not adversarial in nature, the [SSA has] a duty to develop an adequate record from which a reasonable conclusion can be drawn." Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991) (internal citation and quotation marks omitted).  "This duty to develop the record is heightened where the claimant is not represented by counsel, but applies in all cases." Brunel v. Barnhart, No. 00-cv-402, 2002 WL 24311, *8 (D.N.H. Jan. 7, 2002) (citing 20 C.F.R. § 404.1512(d)).  The duty is also heightened "if there is a gap in the record and the ALJ could have filled in that gap without undue effort." Price v. Astrue, [No. 07-cv-166-PB, 2008 WL 4148943, at *4 (D.N.H. Sept. 2, 2008)] (citing Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980)).  "If the ALJ fails to fill those evidentiary gaps, and if they prejudice plaintiff's claim, remand is appropriate." Mandziej v. Chater, 944 F. Supp. 121, 130 (D.N.H. 1996).

Morris v. Astrue, No. 11-cv-248-JL, 2012 WL 4499348, at *9 (D.N.H. Sept. 28, 2012) (emphasis added).  "Prejudice is demonstrated by showing that the additional evidence might have led to a different decision." Id. at *10 (quoting Alker v. Astrue, No. 10-CV-291-SM, 2011 WL 1770473, at *4 (D.N.H. May 10, 2011)).

Having set out the relevant law, the court turns to the relevant facts.  At the start of Keene's hearing, the following exchange took place between the ALJ and Keene's attorney:

ALJ:  . . . Attorney Clickner, at this point we just did have a conversation about submitting just a record of the treatment that's occurred over the last . . . year or so.  And if you could submit that electronically . . . we'll include that in the F

section as one of the medical records.  At this point, any other records that are outstanding?

     ATTY:  No, Your Honor.

Tr. at 38-39.  There is nothing in the record to indicate that Attorney Clickner ever submitted Keene's more recent treatment records.[2]

Keene argues that the ALJ was obligated to obtain the records of the treatment he received during the year leading up to his hearing.  At the same time, however, Keene admits that "[i]t's not known what these treatment records might show with regard to the nature and severity of [his] impairments."  Cl.'s Mem. of Law (doc. no. 8-1) 22.  Were that the last word on the effect of the ALJ's failure to obtain the records at issue, Keene's argument would fail.  See Faria v. Comm'r of Soc. Sec.,

---

[2] With regard to the whereabouts of the medical records at issue, Keene says this in his memorandum of law:

    The undersigned counsel did not represent the plaintiff at his administrative hearing.  It is unknown if the records were never obtained or whether they were submitted but not made part of the administrative record.  The plaintiff's wife wrote a letter in May 2013 complaining that all the medical records were not obtained by the attorney who represented the plaintiff at his administrative hearing (Tr. 284-284).

Cl.'s Mem. of Law (doc. no. 8-1) 21 n.13.  Moreover, Keene's current attorney does not say whether he has obtained the missing records but, in any event, those records are neither attached to nor referred to in either Keene's memorandum of law or his reply brief.

187 F.3d 621, 1998 WL 1085810, at *1 (1st Cir. 1998) (per curiam table opinion) (holding that mere speculation about what medical records might show is insufficient to establish prejudice warranting remand).  Keene also contends, in his memorandum of law, that the ALJ's failure to obtain the records at issue was facially prejudicial, see doc. no. 8-1, at 22, but given the definition of prejudice set out in Morris, the concept of facial prejudice would appear to be legally untenable, and Keene provides no authority for it.

In his reply brief, Keene backs up a step, arguing that his most recent treatment records "were quite pertinent to an assessment of his credibility, an assessment of his residual functional capacity, and an assessment of the weight to give to the opinion of his treating physician."  Cl.'s Reply (doc. no. 12) 2.  However, Keene also states that "it's not known what these treatment records might show," Cl.'s Mem. of Law (doc. no. 8-1), 22, which indicates that he not seen them.  Thus, it is difficult to see how he can argue that they are pertinent.  Rather, as in Morris and Albrecht v. Astrue, 793 F. Supp. 2d 473 (D. Mass. 2011), a case on which Keene places substantial reliance, the issue is not whether Keene was prejudiced by the absence of particular evidence from the record before the ALJ; the issue is whether he was prejudiced by any negative inference the ALJ may have drawn from a lack of evidence that could have

16

been placed on the record.  With that in mind, the court turns
to each of the three areas in which Keene claims prejudice from
the ALJ's failure to develop the record.[3]

### a. Credibility

Keene argues that the missing records "were quite
pertinent to an assessment of his credibility."  Cl.'s Reply
(doc. no. 12) 2.  However, rather than pointing out how the ALJ
relied upon the lack of medical records to impugn his
credibility, he merely asserts "that the lack of contemporary
medical evidence impacted upon his credibility," id. at 3, and
directs the court to the decision in Albrecht, which he
characterizes as strongly analogous to this case.[4]  Albrecht is
readily distinguishable.

---

[3] The following analysis presumes that the ALJ committed a
legal error by not obtaining Keene's more recent medical
records, a proposition that is not necessarily warranted.  See
Devlin v. Sec'y of HHS, 981 F.2d 1245, 1992 WL 385319, at *4
(1st Cir. 1992) (per curiam table opinion) (holding that ALJ did
not err by failing to develop the record where, among other
things, claimant declined ALJ's invitation to supplement the
record to provide evidence he failed to produce at the hearing);
but see Albrecht, 793 F. Supp. 2d at 475, 478 (remanding based
upon missing medical records even though claimant was given time
to supplement the record but did not do so).

[4] Keene first cited Albrecht in his reply brief.  In his
initial memorandum of law, he cited Cox v. Apfel, 160 F.3d 1203
(8th Cir. 1998), Vaile v. Chater, 916 F. Supp. 821 (N.D. Ill.
1996), and Williams v. Callahan, 30 F. Supp. 2d 588 (E.D.N.Y.
1998), for the general proposition that the ALJ has an
obligation to develop the record.  But all of those cases
involved pro se claimants, and Keene makes no attempt to
analogize them to the circumstances of this case.

In Albrecht, Magistrate Judge Collings remanded for further proceedings due to the ALJ's failure to adequately develop the record by requesting missing medical records.  See 793 F. Supp. 2d at 477, 478.  In so ruling, he explained that "Albrecht has unquestionably been prejudiced by the absence of his treating physician's records [because] [t]he lack of medical records was a strike against the plaintiff's credibility vis-à-vis his claimed pain."  Id. at 477.  The ALJ in Albrecht took the lack of medical records to indicate a lack of treatment, despite the claimant's testimony that he had received treatment during the relevant time period.  See id. at 476.

Here, by contrast, the ALJ did not use the lack of medical records to discredit Keene's statements about his symptoms.  To be sure, the ALJ did discount the credibility of those statements because Keene had "received little in the way of treatment."  Tr. at 26.  But, the ALJ also: (1) found that Dr. Fitzgerald had treated Keene continuously since 2005; (2) heard testimony from Keene concerning the scope of the treatment he had received in 2012, see Tr. at 67; and (3) did not use the lack of medical records to make any findings that ran counter to Keene's testimony concerning the treatment he had received in 2012.  Because the ALJ in this case did not base his credibility assessment on a lack of medical records from 2012, Albrecht is inapposite, and Keene cannot demonstrate, as to the ALJ's

credibility determination, that he was prejudiced by the lack of medical records.

### b. Residual Functional Capacity

Keene next argues that the missing medical records "were quite pertinent to . . . an assessment of his residual functional capacity."  Cl.'s Reply (doc. no. 12) 2.  However, he does not develop that argument.  In any event, his argument is unavailing because Keene does not assert that the records he seeks consist of anything other than raw medical evidence, and an ALJ may not "formulate an RFC from raw medical evidence," Widlind v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *16 (D.N.H. Apr. 16, 2012), report & recommendation adopted by 2012 WL 1676984 (D.N.H. May 14, 2012)).  Thus, as to the ALJ's determination of Keene's RFC, Keene was not prejudiced by the lack of medical records.

### c. Weight Given to Dr. Fitzgerald's Opinion

Finally, Keene argues that the missing medical records "were quite pertinent to . . . an assessment of the weight to give the opinion of his treating physician."  Cl.'s Reply (doc. no. 12) 2.  However, rather than pointing out how the ALJ relied upon the lack of medical records to discount Dr. Fitzgerald's opinion, he merely asserts that lack of medical evidence "impacted on the weight given to the opinion of his treating physician, whose opinion was given 'little weight' by the ALJ,"

id. at 3.  And, again, Keene directs the court to the decision in Albrecht.  The problem with Keene's argument is that Albrecht is distinguishable in this respect: the ALJ in that case discounted the treating physician's opinion based upon a finding that he had not treated the clamiant during a particular time period.  Here, the ALJ did not make any such finding.  Furthermore, unlike the ALJ in Albrecht, the ALJ in this case did not cite a lack of medical records authored by the treating physician as a basis for discounting his opinion.  Accordingly, Keene cannot demonstrate, as to the ALJ's handling of Dr. Fitzgerald's opinion, that he was prejudiced by the lack of medical records.

### 3. RFC & Step Five

Finally, Keene argues that the ALJ's RFC was flawed because of the errors he made in his credibility assessment, his weighing of Dr. Fitzgerald's opinion, and the absence medical records from 2012.  Because the court has ruled that the ALJ committed no errors in those areas, it must also reject Keene's RFC argument.  Moreover, as the court has identified no error in the ALJ's determination of Keene's RFC, it must also reject Keene's argument that the ALJ's step-five determination was not supported by substantial evidence.

**Conclusion**

Because the ALJ has committed neither a legal nor a factual error in evaluating Keene's claim, see Manso-Pizarro, 76 F.3d at 16, his motion for an order reversing the Acting Commissioner's decision, document no. 8, is denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 10, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


October 27, 2014

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.